UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**FEDERAL TRADE COMMISSION,**

    **Plaintiff,**

v.                                                       Case No. 8:09-cv-2309-T-23TBM

**WASHINGTON DATA RESOURCES,**
**et al.,**

    **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

THIS MATTER is before the court on referral by the Honorable Steven D. Merryday for a report and recommendation on **Plaintiff Federal Trade Commission's Motion to Modify Preliminary Injunction to Base the Asset Freeze as to Defendant Richard Bishop on an Explicit Reasonable Approximation of His Ill-Gotten Gain** (Doc. 360). Defendant Richard Bishop has filed a response in opposition (Doc. 369).[1] A hearing on the motion was conducted on June 21, 2011. For the reasons set forth below, it is recommended that the motion be granted in part.

A.

The Federal Trade Commission ("FTC") again moves the court for an order imposing an asset freeze as against the properties of Mr. Bishop ("Bishop"). The FTC's motion is

---

[1] Also pending is Defendant Bishop's Motion for Approval of Stipulations Upon Entry of Eleventh Circuit Court Mandate (Doc. 377) and the Federal Trade Commission's response in opposition (Doc. 378). The motion (Doc. 377) is denied. The stipulation is wholly unilateral and not agreed to by the Federal Trade Commission.

prompted by the Eleventh Circuit's ruling on Bishop's appeal of this court's entry of a preliminary injunction with asset freeze.[2] In its opinion of April 25, 2011, the Eleventh Circuit vacated and remanded the asset freeze entered in connection with the preliminary injunction in this case, holding that this court "abused its discretion by imposing too broad of an asset freeze without making any reasonable approximation of Defendant-[Bishop's] ill-gotten gains." *FTC v. Bishop*, Nos. 10-10715, 10-12901, 2011 WL 1560656 (11th Cir. Apr. 25, 2011).[3] On remand, the Eleventh Circuit directed this court "to determine whether the asset freeze corresponds with a reasonable approximation of Bishop's unjust enrichment, in accordance with equitable principles." *Id.*

The FTC urges that the evidence presented thus far demonstrates that the asset freeze initially ordered by the court did not exceed a reasonable approximation of Bishop's ill-gotten gains and in fact was for far less. As for the appropriate measure of the asset freeze and the property of Bishop subject to a freeze order, the FTC's position has not changed. Thus despite the appellate order, it again urges that the gross receipts from consumers minus refunds, here, nearly $4 million, is the appropriate measure for determining the scope of the

---

[2] In a financial statement Bishop completed for the FTC, he reported the following assets: the Bishops' personal residence; $14,700 cash on hand; $124,786 in a Gold Money account; $12,155 in a [checking] account; $38,500 in a Scottrade account in the name of Hemisphere Partners; $39,616 in another Scottrade account; $805,000 in an attorney trust account; and certain other items of personal property such as automobiles, jewelry, etc. *See* Def. Ex. 19, January 7, 2010, hearing. The original asset freeze effectively froze all of Bishop's assets. *See* (Doc. 67). Thereafter, the court permitted him a monthly sum of $9,500.00 for necessary living expenses and discrete amounts for fees and costs.

[3] The decision affirmed the entry of a preliminary injunction. I do not undertake to recount herein findings made in connection with that portion of the prior order. To the extent necessary, I adopt and incorporate herein the factual findings previously made in connection with the preliminary injunction.

2

asset freeze. And, regardless of any nexus to the alleged illegal activity and regardless of whether the property is jointly held by Bishop and his wife, the FTC again seeks to tie up all of Bishop's assets, an amount it now approximates at $650,000.00.[4] It again argues that Bishop's ownership and direction of two companies involved in the scheme to defraud, Nationwide Marketing ("Nationwide")[5] and Optimum Business Solution, LLC, d/b/a Attorney Finance Services ("AFS"), supports his individual liability for the monetary relief sought as against all the entities engaged in this fraudulent enterprise. As such, it seeks an order reinstating the asset freeze originally imposed as a part of the preliminary injunction on a finding that Bishop's approximate unjust enrichment is nearly $4 million.[6] Given his potential individual liability and the fact that Bishop's assets at present total only approximately $650,000.00, it urges that the whole of these assets be frozen pending further proceedings regardless of a nexus between the property and the alleged deceptive activity and regardless of whether such property is jointly held. (Doc. 360).

In response, Bishop urges that the FTC's proposed continued freeze over all his assets is unwarranted both legally and factually. He argues that, contrary to the FTC's position that his gains and potential liability are properly measured by the net proceeds paid by all

---

[4]This is the amount estimated by counsel for the FTC at the June 21, 2011, hearing.

[5]Nationwide is not a party to this litigation.

[6]The FTC proffers that its investigation suggests the net proceeds from consumers to be as high as $3.9 million. The FTC alternatively proposes $2 million as the appropriate measure of Bishops's ill-gotten gains. It arrives at this figure by adding the gross revenues paid to Nationwide for its marketing and mailing services ($698,396.40) and the gross receipts from consumers paid to AFS, the clearinghouse for payments of this enterprise, ($1,232,943.50), together with an additional sum, approximately $60,057.45, allegedly paid to Nationwide as part of what it refers to as a "kickback" scheme.

consumers (gross revenues less refunds), any freeze of his assets is limited to those gains he derived from the alleged violations. Thus, with the possible exception of the profits he received from Nationwide, all his other assets (including those jointly held with his wife) were acquired prior to and apart from the deceptive conduct charged and are not properly the subject of a freeze order.[7] In support, Bishop urges that the Eleventh Circuit's decision vacating the asset freeze is clearly understood to reject the FTC's position that his potential liability is joint and several and that consumer losses is the appropriate measure of his unjust enrichment. Furthermore, Bishop maintains that the FTC wrongly ignores the nexus requirement to any asset freeze. Noting the Eleventh Circuit's citation to *Commodity Futures Trading Commission v. Wilshire Investment Management Corp.,* 531 F.3d 1339, 1343 (11th Cir. 2008), Bishop argues that the court may exercise its equitable power only over property causally related to the wrongdoing and here, such limitation dictates that any asset freeze is limited, at most, to the $128, 910.00 he derived from his activities at Nationwide. More fundamentally, he argues that the FTC fails to acknowledge the distinction between legal and equitable restitution and he cites to *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002). Rather than pursuing the equitable remedy to which it is entitled, Bishop urges that the FTC improperly seeks to impose personal liability on him by way of legal restitution. Thus, rather than seek a constructive trust or equitable lien over particular property causally related to his purported deceptive activity, Bishop maintains that the FTC

---

[7]According to the pleading, the profits derived from Nationwide and paid to Bishop totaled $128, 910.00. Bishop maintains that the AFS account was merely a pass-through account and that neither that company nor he received any profits. (Doc. 369 at 5).

4

seeks to hold him liable in full for the net monies paid by consumers under this allegedly deceptive scheme. (Doc. 369).

B.

In addressing the scope of the asset freeze in this case, the Eleventh Circuit set forth as applicable law the following passage:

> The FTC [Act]'s grant of authority to issue an injunction carries the full range of equitable remedies, among which is the power to grant restitution. *Wilshire,* 531 F.3d at 1344 (quoting *FTC v. Gem Merch. Corp.,* 87 F.3d 466, 468-69 (11 th Cir. 1996)). Restitution is an equitable remedy designed to cure unjust enrichment of the defendant. *Id.* at 1345 (citation omitted). Specifically, restitution and disgorgement deprive the defendant of his ill-gotten gains; these equitable remedies do not take into consideration the plaintiff's losses. *Id.* (citation omitted). The "burden for showing the amount of assets subject to disgorgement (and, therefore available for freeze) is light: 'a reasonable approximation of a defendant's ill-gotten gains [is required] . . . Exactitude is not a requirement.'" *Sec. & Exch. Comm'n* v. *ETS Payphones, Inc.,* 408 F.3d 727, 735 (11th Cir. 2005) (quoting *Sec. & Exch. Comm'n* v. *Calvo,* 378 F.3d 1211, 1217 (11th Cir. 2004)).

2011 WL 1560656, at *1. Thus, the measure of equitable[8] restitution is the benefit unjustly received by the defendant, i.e., the defendant's ill-gotten gains. *See id.; Wilshire*, 531 F.3d at 1345. "Labeling the remedy 'consumer redress' or 'disgorgement,' each a restitutionary remedy, does not alter the basic principle that restitution is measured by the defendant's gain." *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 67 (2d Cir. 2006). To determine the amount of equitable restitution or disgorgement, the FTC must show that its calculations reasonably

---

[8] As recognized by the Eleventh Circuit, the complaint in this case demonstrates that the FTC seeks equitable (not legal) relief. *See* (Doc. 1).

5

approximated the amount of Bishop's unjust gains, thereafter, the burden shifts to Bishop to show that those figures are inaccurate. *See id.* at 68.

C.

Here, the FTC's calculation of Bishop's wrongful gains at roughly $4 million is tied to consumer losses and does not reasonably approximate Bishop's unjust gains in the given circumstances. The remedy sought by the FTC is equitable and, as noted by the Eleventh Circuit, equitable remedies do not take into consideration the plaintiff's losses. *Bishop*, 2011 WL 1560656, at *1 (citing *Wilshire*, 531 F.3d at 1345). On the other hand, Bishop urges that at most those gains are his profits realized from the work by Nationwide. Neither is this the proper measure. By my consideration, the proffered evidence demonstrates that the reasonable approximation of Bishop's ill-gotten gains or unjust enrichment is the monies paid to his company, Nationwide, to perform the marketing and mailing activities integral to this allegedly deceptive scheme. As for the amount of gain to Nationwide, its Profit & Loss statement dated January 1 through December 17, 2009, shows its income was $698,396.40.[9] (Doc. 360, Ex. 1; Doc. 369, Ex. F). Although Bishop urges this figure is inaccurate as to his ill-gotten gains because he claims to have realized only a $128,910.00 profit from these monies, I remain unconvinced that his profits are the correct measure of his unjust enrichment.[10] *See FTC v. Direct Marketing Concepts, Inc.*, 624 F.3d 1, 14 (1st Cir. 2010)

---

[9]This document was also entered into evidence at the hearing on January 7, 2010, as Defendant's Ex. 22.

[10]While not specifically distinguishing between net profits and net revenue, *Wilshire* and *Verity* also suggest the appropriate measure is net revenue. *See Wilshire*, 531 F.3d at 1345 (concluding that "the proper measurement [of the equitable remedy of restitution] is the amount . . . wrongfully gained); *Verity*, 443 F.3d at 67 (concluding that appropriate measure

6

(upholding damages determination on gross receipts rather than net profits); *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1159 (9th Cir. 2010) (appropriate measure of equitable disgorgement is total revenue); *FTC v. Bronson Partners, LLC*, 674 F. Supp. 2d 373, 384 (D. Conn. 2009) (citing *Verity*, 443 F.3d at 67-68; *Seismic Entm't Prods., Inc.*, 441 F. Supp. 2d 349 (D. N.H. 2006), for rule that net profits are not the appropriate measure). Bishop does not discuss this contrary authority. And, the cases on which he relies are unpersuasive.[11] None of them hold that net profits (as opposed to net revenue) is the correct measure of ill-gotten gains for equitable restitution or disgorgement in an action brought by the FTC.

The FTC argues that in addition to this sum, the court should include the revenue generated by AFS during Bishop's tenure as owner and director of its activities. Thus, the FTC argues that in addition to the gains of Nationwide, Bishop is accountable for about $1.2 million of consumer funds collected by AFS during the period from March 4 through July 26, 2009.[12] The proffered evidence shows that Bishop purchased Optimum Business Solutions a/k/a AFS from Doug Crowder's wife in February 2009 for a nominal sum. Bishop sold AFT to Kathleen Lewis in approximately June 2009 for a nominal sum. *See* Aff. Bishop (Doc. 32-5, ¶¶ 4-6). Thus, Bishop owned and ran AFS from approximately February 2009 through June

---

of restitution is benefit unjustly received by the defendants).

[11] Bishop cites *Proudfoot Consulting Co.v. Gordon*, 576 F.3d 1223 (11th Cir. 2009); *FTC v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009); *U.S. v. Phillip Morris USA, Inc.*, 396 F.3d 1190 (D. D.C. 2005); *IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368, 370 (5th Cir. 2002); and *Mid-West Paper Products Co. v. Continental Group, Inc.*, 596 F.2d 573 (3d Cir. 1979). (Doc. 369 at 5).

[12] AFS's Profit & Loss statement dated March 4, through July 25, 2009, is found at Document No. 152-11 at 2. For this period, AFS showed gross income of $1.2 million and net proceeds of $282,000.

2009, which is roughly the same period of time during which AFS received consumer payments of nearly $1.2 million. While AFS appears to have played an integral role in the banking and distribution of consumer funds generated by the other entities actively engaged in the allegedly deceptive scheme, it also appears that it operated merely as a clearinghouse for distribution of those funds to those actively involved in the alleged deceptive scheme, as well as others. Further, this figure does not appear to take into consideration instances when refunds were made or when consumers actually received the benefit bargained for. Thus, at present, the amount of these sums collected that are ill-gotten gains of Bishop or his company cannot be determined. Given the assets available to Bishop, the determination of this appears somewhat of a moot point. Counsel for Bishop has advised chambers that the total presently held in his trust account(s) for the benefit of Bishop is $433,746.56. When combined with sums frozen in other accounts, Bishop's liquid assets are approximately $663,503.[13]

In sum, I find the reasonable approximation of Bishop's ill-gotten gains to be at least $698,000.00 and the FTC has demonstrated as such.

Bishop urges that certain assets he held prior to the activity alleged cannot be made a part of the asset freeze. Citing *Wilshire*, he urges that certain of his assets are beyond the reach of the FTC. More particularly, he urges that his jointly held funds in certain Scotttrade accounts, a Gold Money account, monies in a joint checking account and cash on hand, and his personal residence are not properly the subject of an asset freeze. As noted above, the FTC urges that these sums may be frozen despite the lack of any nexus to the deceptive

---

[13]This sum does not include the value of the Bishop's residence, which appears at present to have no equity, or the value of automobiles, household items, or jewelry jointly held with his wife.

8

scheme and regardless of whether such are jointly held. In light of the Eleventh Circuit's decision vacating the original freeze order, I cannot agree with the FTC.

By my consideration, the available evidence demonstrates that Bishop had significant income in 2006 and especially 2007, income which indisputably was unrelated to the activity alleged by the FTC. *See* Def. Exs. 15 and 16 to January 7, 2010, hearing. Furthermore, certain of his financial accounts existed before the pertinent time period in 2008 and 2009 and cannot be causally related to the alleged improper activities in this case. While the FTC seeks to impose personal liability against Bishop, given the Eleventh Circuit's decision and in particular, its citation to *Wilshire*, I conclude that assets amassed prior to the alleged wrongdoing should be excluded from any asset freeze. This includes the Bishops' jointly held personal residence, a Scottrade account in the name of Hemisphere Partners for $38,500, and a Gold Money account for $124,786.[14] It is not clear from the proffered evidence whether a second, jointly held Scottrade account for $39,616 or an account for $12,155[15] are appropriately excluded from the freeze.[16]

---

[14] These are identified in the financial statement Bishop completed for the FTC in November 2009. *See* Def. Ex. 19 to January 7, 2010, hearing. The testimony at the June 21, 2011, hearing and Bishop's 2007 tax return support that these assets were acquired prior to the charged conduct.

[15] Bishop's financial statement does not reveal the exact nature of this account. It appears, however, that the account is a Bank of America checking account. *See* (Doc. 78 at 5).

[16] Counsel should clarify whether these assets were acquired prior to the charged activity and address the $14,7000 cash on hand at Bishop's home at the time of entry of the TRO.

9

D.

In sum, I conclude that a reasonable approximation of Bishop's ill gotten gains starts at $698,000.00. The court should again enter an asset freeze commensurate with this finding. This asset freeze should not include those specified financial accounts which bear no nexus to the alleged improper activities or Bishop's personal residence, which appears at present to have no equity.

    Respectfully submitted on this
15th day of July 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.[17] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
The Honorable Steven D. Merryday, United States District Court Judge
Counsel of Record

---

[17] The FTC has withdrawn its motion for an expedited objection period. (Doc. 393).